## GUADALUPE CANTU V. THE STATE.

No. 20577. Delivered November 8, 1939.

Rehearing Denied January 31, 1940.

Appealed to United States Supreme Court.

Mandate of Supreme Court of United States Refusing Petition

for a Writ of Certiorari Filed February 14, 1941.

The opinion states the case.

*Cameron & Hardin,* of Edinburg, *King C. Haynie,* of Houston, and *Ramon L. Longoria,* of McAllen, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder; the punishment assessed is confinement in the State penitentiary for a term of twenty-five years.

The indictment, which contains four counts, alleges that the appellant unlawfully, voluntarily and with malice aforethought killed Narcisa Lupez Cantu by shooting her with a gun. The proof shows that on the afternoon of January 23, 1939, appellant and his wife returned from a visit they had made to his mothers. A few minutes after their return, Mrs. Cantu went out to feed the chickens, and appellant also went out into the back yard. They then went back into the house and a short time later a gun shot and a woman's screams were heard. A few seconds later another shot was heard and soon thereafter appellant was seen going to the orchard with a bundle and a small oil can. Smoke was then seen, and appellant a short time later started the water pump and watered the cabbage which were growing in the garden. After this had been completed, he was seen to return to his house, come out again, get into his car and proceed toward town. In about an hour he returned with some ice which he placed in the cooler. He then called for his wife, but not receiving any reply he turned on the electric light and found her lying dead on the kitchen floor. He then inquired of a servant, Sofia Vela, who lived nearby, as to whether or not she had heard or seen anything during his absence. Upon being informed that she had not he went to his brother's home and informed him of his discovery and upon returning from town to his home with the ice. The officers and the undertaker were summoned. A doctor made a post mortem examination which revealed three wounds on the deceased's body, two made by bullets and one being a superficial wound.

One of the bullets had entered at the breast and gone through and the other had entered at the right ear and lodged in the skull. This bullet was recovered and appeared to have been fired from a 45-calibre pistol. An investigation of the premises failed to reveal anything was missing, and while appellant owned shotguns and a 38-calibre pistol, nothing was said about owning a 45. On the following day, the officers in their search found cartridges fitting a 45-calibre pistol. Appellant admitted that he had such a gun but stated that he had left it at the home of his parents. He admitted later that he had the 45-calibre pistol with him when he returned to his home with the ice and had it in his hand when he turned on the lights. Mr. Gonzaullas of the Department of Public Safety, who professed to be an expert on the identification of firearms, etc., testified that it was his opinion that the bullet taken from the body of the deceased was fired from the 45-calibre pistol owned by the appellant and shown to have been in his possession about the time the offense was committed. It was shown that appellant carried two policies of insurance of $1,500 each on his wife's life. It was also proved that on former occasions appellant abused and mistreated the deceased. There was some evidence offered on behalf of the appellant which tended to show that Sofia Vela, the servant, could not have seen what she claims to have seen from the window of her home. If this be conceded the fact remains that she heard two shots fired and screams of a woman coming from appellant's home at the time appellant was present. The deceased had two gun-shot wounds in her body and these wounds were inflicted with what appeared to be a 45-calibre gun. No other person seems to have been seen in or about the premises on the afternoon in question except the appellant. We believe the evidence is sufficient to sustain the jury's conclusion of appellant's guilt. It might be noted that this cause was once before this court on habeas corpus with the object in view of obtaining bail. See Ex Parte Cantu, 117 S. W. (2d), 1102.

By bill of exception number one, appellant complains because the witness, Sofia Vela, was permitted to explain why she told appellant when he came to her home and asked her what she had seen and heard that she had seen or heard nothing. She explained that the reason she told him she heard or saw nothing was due to the fact that she was afraid of him. Appellant objected on the ground that this was a conclusion of the witness. We do not so regard it. The witness had a right to explain why she made such a statement to the appellant. See Branch's Ann. P. C., p. 60, Sec. 94; Cornett v. State, 54 Texas Crim.

Rep., 373; 112 S. W., 1071.

Bill of exception number two complains of testimony given by Mr. Gonzaullas, a professed expert on identification of firearms, bullets and cartridges. Appellant objected to all of his testimony on the ground that he had not qualified as an expert; that he failed to show a sufficient knowledge of the scientific subject upon which he gave his opinion and therefore his testimony had no probative value. We know of no legal standard by which to determine a person's qualification as an expert on the subject mentioned. While the examination of the witness might have shown that his knowledge of the subject was more limited than might have first appeared, we would not be authorized to hold as a matter of law that he did not measure up to the standards of an expert. The question of whether or not an expert witness has so qualified is one which rests largely in the discretion of the trial judge and we would not be authorized to disturb his decision on the matter unless it clearly appeared that he abused his discretion. See Landry v. State, 117 Texas Crim. Rep., 396; 35 S. W. (2d), 433; Guse v. State, 97 Texas Crim. Rep., 212; 260 S. W., 852. The objection to his testimony seems to have gone more to its weight than its admissibility.

By bill of exception number three, appellant complains of the admission of a purported voluntary statement made to the District Attorney, Mr. Hartley. His grounds of objection seem to be that the same was not admissible in evidence against him since it was made through an interpreter, one Longoria, who translated what the defendant (who was unable to speak English) said from Spanish into English, then read the written statement over to the defendant, who signed it. It is the defendant's contention that since the interpreter did not take the stand and testify to the effect that he properly interpreted the statement and since the district attorney who wrote down the statement did not understand Spanish, the State had not laid a proper predicate for its admission in evidence. It is true that Longoria did not verify the statement itself as being true and correct; or that the interpretation thereof was correct, but we note from the record that another witness took the stand who was present at the time the statement was made, and testified as follows:

"After the defendant made this statement and before it was signed by him it was read over to him by Mr. Longoria in Spanish and I am able to state that it was read to him correct-

ly in Spanish, although there were some corrections made in the statement by the defendant * * * or at his instance. I would recognize that statement if I were to see it again * * that is the statement that the defendant signed at the time I have just related."

It is our opinion that a proper predicate was laid for the introduction of the purported confession and that the proper warning was given the defendant. We do not think our holding on this point in conflict with the holdings of this court in the cases of Turner v. State, 89 Texas Crim. Rep., 615, 232 S. W. 801, and Cervantes v. State, 52 Texas Crim. Rep., 82, 105 S. W., 499. In those cases the State did not attempt to lay any predicate whatsoever and the testimony of the witnesses as to what the interpreter said was clearly hearsay.

Bill of exception number four complains of the same matter as bill number two. For the reasons there assigned, this bill is overruled.

Bill number five complains of the following remarks by the State's attorney in his closing argument to the jury:

"Counsel has made much ado about the actions of the defendant in this case. He has told you about * * * this defendant down at Mercedes * *. This very grilling he went through down there. I think the evidence discloses the examination began about eight o'clock or eight-thirty. * * * Mr. Hardin says they had not give him a drink of water, and Mr. Hardin says they did not offer him anything to eat—no, but this defendant, when he shot her down in cold blood, he did not say, 'Do you want some water, or want something to eat.' "

Upon objection that the statements constituted unsworn testimony, the court retired the jury and gave the attorney for the State an opportunity to explain his statements. Upon recalling the jury, the State's attorney stated to the jury as follows:

"* * I stated that the defendant shot his wife down in cold blood, and that he did not give her a drink of water or anything to eat. There is no evidence in this record as to whether or not the defendant gave his wife a drink of water or anything to eat, and I did not intend to convey to the jury that there was any evidence of that.* *"

The court then instructed the jury that they could consider the above remarks only as argument, and not as a statement of any fact. We think the prompt action of the trial court in his instruction to the jury and the admission of the State's at-

torney before the jury properly confined them to a consideration of the statements as argument only. The argument that appellant shot his wife down in cold blood was, we think, a reasonable deduction from all the facts and circumstances in evidence. Furthermore it appears from the entire proceedings that a part of the argument complained of was in rebuttal to argument by appellant's counsel.

Bill of exception number six complains of much argument by the State's attorney, the greater part of which was clearly deduced by him from the facts in evidence. The remainder is disposed of by us in our discussion of bill of exception number five.

It appears from bill of exception number seven that in rebuttal to the expert testimony offered by the State the defendant introduced a ballistics expert who stated that after a careful examination of the evidence bullet it was his opinion that no expert would be warranted in saying that the bullet came from the 45-calibre pistol owned by the appellant. Thereupon the State offered to allow the jury to examine the bullet under a microscope. The State's expert stated that it was his opinion, based on what people had told him who were not experts, but who had examined bullets under such microscope under his supervision, that the jury could gain something by a comparative examination of the bullet taken from the skull of the deceased and by another bullet fired from the same gun. Upon strenuous objection of appellant's attorney, the State withdrew its offer. The objection to these proceedings seems threefold: (1) That the State's witness had not qualified as an expert; this contention we have disposed of in considering bills numbers two and four. (2) That what the witness stated about what people who had examined bullets at his direciton had told him about being able to see certain things was purely hearsay. The bill shows that the court instructed the jury to disregard the hearsay statements. (3) That the defendant's legal rights were prejudicially affected by this offer. It appears from the whole record that these proceedings were had at the instance of the court to determine if an examination by the jury of the bullet under the direction and supervision of the expert would elucidate any fact in issue. The State had a right to introduce rebuttal testimony which would tend to contradict an expert introduced by the defendant and to allow the jury to inspect the bullet under a microscope, provided any material fact could be discovered as a result of this inspection. The court, by allowing the above inquiries, was only attempting to determine

whether or not these non-expert laymen, the jury in this case, could discover anything by inspection of the bullets under a microscope while supervised by an expert which might elucidate the issue. He was attempting to lay a predicate for the introduction of this evidence, with a view of determining its admissibility. The questions directed at the State expert witness by counsel seems clearly to have been directed to attain this objective. Moreover the State withdrew its offer of this evidence. As stated in appellant's very able brief, there is no doubt that the comparison microscope as used is a very delicate instrument—one that should not be toyed with by novices; but here according to the State's theory, the jury's inspecion was to be under the direct supervision of one who claimed to be an expert on the subject and who would properly direct them in its use. This issue was perhaps the most hotly contested one in the case, and the State had a right to strengthen its case and its witnesses by such an experiment if it could show that the same would elucidate the issue. As stated above, however, the State withdrew its offer. See Hickey v. State, 51 Texas Crim. Rep., 230, 102 S. W., 417; Butler v. State, 61 Texas Crim. Rep., 133, 134 S. W., 230.; Short v. State, 63 Ind. 376.

By bill of exception number eight, appellant complains of the introduction in evidence of a second purported voluntary statement. His objection to its admission in evidence was that it was not voluntary and was obtained by the exercise of undue influence exerted by the officers over appellant, and for the further reason that it did not comply with all the statutory requirements. It appears from the bill that the proper predicate was laid for its introduction. It does not appear that any such undue influence was exercised by the officers over the appellant as would make the statement inadmissible. However the court, in his charge to the jury, instructed them that if they believed from the evidence that the confession was obtained as a result of coercion or undue influence exercised by these officers over appellant, not to consider the same for any purpose. This was the proper procedure under the established rule in this State, the question being one for the jury's determination. See Bingham v. State, 97 Texas. Crim. Rep., 595; 261 S. W., 747; Belcher v. State, 71 Texas Crim. Rep., 646; 161 S. W. 459; Blake v. State, 110 Texas Crim .Rep., 128; 7 S. W. (2d), 579.

By bill of exception number nine, appellant complains of the action of the court in declining to sustain his challenge of the array of the grand jury. His challenge was based on the ground

that one of the jury commissioners appointed by the court at the previous term (who selected the grand jury which returned the indictment against appellant) was not a freeholder in the State nor a householder in the county. The court heard evidence relative thereto and it was clearly developed that the designated jury commissioner was a freeholder. Moreover, we do not believe that the challenge was sufficient under Art. 361 C. C. P.

Appellant also addressed many objections to the court's charge. On the whole we think it was a fair application of the law to the facts. One objection addressed to the charge was that the court failed and refused to limit the testimony of Sofia Vela relative to antecedent quarrels, assaults, and batteries by appellant upon the deceased and to instruct them that they could only consider such testimony as tending to show motive. The court was not required to give such instruction, because motive is a part of the proof to establish the main offense. We quote from the language of Judge White in Hudson v. State, 28 Texas Crim. App., 323:

"Such evidence being legitimate and admissible to prove a main issue in the case, to-wit, defendant's motive and malice in the perpetration of the murder, it was not obligatory upon the court in its charge to limit and restrict the purposes for which the evidence was admitted. The rule as to restriction or limitation does not obtain with regard to evidence proving directly the main issue involved in the trial. Davidson v. State, 22 Texas. Ct. App., 373."

See also Millican v. State, 63 Texas Crim. Rep., 440; 140 S. W., 1142; Gradington v. State, 155 S. W., 210; Branch's Ann. P. C. Sec. 1885, p. 1047.

Appellant also objected to the court's charge relative to his instruction on accomplice witnesses. We do not deem it necessary to discuss his criticism thereof, inasmuch as we are of the opinion that Sofia Vela was not an accomplice witness, and that the evidence did not raise the issue as to whether or not she was an accomplice witness. Hence no instruction thereon was necessary. The only theory upon which appellant contended that she was an accomplice witness is that when appellant asked her on the day that the alleged offense was committed whether or not she had heard or seen anything during his absence, she replied in the negative. He seems to take the position that this raised the issue as to whether or not she was an accessory after the fact. The record discloses that this witness made no affirmative statement which would have exculpated appellant or raised

an affirmative defense in his behalf. Neither did she withhold any fact from him which he did not already know. When he went to see her at the servant house, he already knew his wife was dead on the kitchen floor and knew that the homicide had occurred within his own home. She suppressed no fact not known to him or which could be deemed as a concealment of any fact tending to prevent his detection, apprehension or prosecution for the offense. It is obvious to us that she was not an accomplice witness. The mere fact that she denied any knowledge of the crime would not make her an accomplice. See Tipton v. State, 72 S. W. (2d), 290; Franks v. State, 95 S. W. (2d), 128; Allen v. State, 75 S. W. (2d), 101.

It might be well, however, for the courts in preparing instructions relative to accomplice testimony, to examine the case of Alsup v. State, 120 Texas Crim. Rep., 310, 49 S. W. (2d) 749.

All other matters complained of by appellant have been considered by us and are deemed to be without merit.

No error of a reversible nature appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Upon full consideration of the appellant's motion for rehearing, we find that all the matters raised in said motion have been considered by the court and its conclusion reflected in the original opinion herein. We adhere to the views there expressed and overrule the motion for rehearing.