**Fernando RODRIGUEZ, Jr., et al.,**
**Plaintiffs-Appellants,**

**v.**

**The Honorable Archie S. BROWN et al.,**
**Defendants-Appellees.**

**No. 28217.**

United States Court of Appeals,
Fifth Circuit.

July 2, 1970.

Mario G. Obledo, Pete Tijerina, San Antonio, Tex., Jack Greenberg, Norman Amaker, New York City, for plaintiffs-appellants.

Sparta Bitsis, Asst. Criminal Dist. Atty., Ted Butler, Criminal Dist. Atty., Preston H. Dial, Jr., Asst. Crim. Dist. Atty., San Antonio, Texas, Crawford Martin, Atty. Gen. of Texas, Lonnie Zwiener, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before WISDOM and INGRAHAM, Circuit Judges, and BREWSTER, District Judge.

INGRAHAM, Circuit Judge:

Suit was instituted by Fernando Rodriguez, Jr., et al. on behalf of themselves and all others similarly situated, as plaintiffs, against The Honorable Archie S. Brown, The Honorable A. A. Semaan, as District Judges of the 144th and 175th State Judicial Districts, respectively; J. T. Palmer, Burton W. Armstrong, Mrs. Ann Gossett, Russell Chiodo and Joe M. Garza, as members of the Grand Jury Commission; and Elton Cude as District Clerk, defendants.

The suit was filed as a class action for injunctive and declaratory relief under 28 U.S.C. §§ 1343(3), 1343(4), 2201, 2202, 2281, 2284 and 42 U.S.C. § 1981, in which the jurisdiction of a three-judge district court was invoked pursuant to 28 U.S.C. §§ 2281 and 2284 to vindicate and enforce rights of the plaintiffs-appellants and members of their class guaranteed by the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. The denial of these rights arises under certain statutes of the State of Texas, namely, to-wit: Articles 19.01, 19.04, and 19.08, Vernon's Ann.Code of Criminal Procedure (quoted in full in the Appendix), which govern the qualifications of grand jury commissioners and members of the grand jury. The challenges to the constitutionality of the statutes are two fold: (a) the statutes are unconstitutional upon their face by the imposition of a wealth and social standard which bears no relevance to the competency of a person to serve as either a grand jury commissioner or as a grand juror, and (b) the statutes were unconstitutionally applied in that selection to the grand jury was restricted to

a closed circle of business and professional people, friends, acquaintances and relatives of the grand jury commissioners.

Initially, the convening of a statutory three-judge court was denied. In the interim, Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968), was published and a statutory three-judge court was designated. It was thereafter determined by the three-judge panel that the case was not one for a statutory three-judge court, but rather, should be heard and determined by a single judge, Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L. Ed. 152 (1933), Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and Judge Spears, acting singly, but with the concurrence of the other two judges of the three-judge panel, denied relief to plaintiffs.

▇ The brunt of plaintiffs' attack is to secure the right of qualified Mexican-American citizens in Bexar County, Texas, to be fairly chosen for service on grand jury commissions and grand juries in Bexar County, Texas, without discrimination based on national origin and to have the number of such persons chosen fairly so as to reflect a truly representative cross-section of the community, and that the freeholder, householder requirements discriminate because of socio-economic standards and background with respect to their opportunity to serve on grand jury commissions and grand juries in Bexar County.

The trial judge found as a fact that (1) approximately 28% of the total membership of the thirteen grand jury commissions over the past two year period were Mexican-Americans; (2) approximately 16% of the total membership of the grand juries for the same period were Mexican-Americans; (3) the percentage of Bexar County citizens available for jury service who are Mexican-Americans is between 15.4% and 17.5%; and (4) the disparity is not such as to indicate discrimination against Mexican-Americans. The trial judge also found as a fact that a fair number of those chosen as grand jurors and commissioners have been wage earners. These findings are supported by the record.

Over the years there have been many attacks upon the Texas jury system and procedures. And although the Supreme Court has reversed criminal convictions upon particular facts in specific cases, the attacks upon constitutionality have not been successful. Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940).

In *Hernandez*, the Supreme Court, speaking through Mr. Chief Justice Warren, commented:

Throughout our history differences in race and color have defined easily identifiable groups which have at times required the aid of the courts in securing equal treatment under the laws. But community prejudices are not static, and from time to time other differences from the community norm may define other groups which need the same protection. Whether such a group exists within a community is a question of fact. When the existence of a distinct class is demonstrated, and it is further shown that the laws, as written or as applied, single out that class for different treatment not based on some reasonable classification, the guarantees of the Constitution have been violated. The Fourteenth Amendment is not directed solely against discrimination due to a "two-class theory"—that is, based upon differences between "white" and Negro.

As the petitioner acknowledges, the Texas system of selecting grand and petit jurors by the use of jury commissions *is fair on its face and capable of being utilized without discrimination.* But as this Court has held, the system is susceptible to abuse and can be employed in a discriminatory

manner. The exclusion of otherwise eligible persons from jury service solely because of their ancestry or national origin is discrimination prohibited by the Fourteenth Amendment. *The Texas statute makes no such discrimination,* but the petitioner alleges that those administering the law do.

To say that this decision revives the rejected contention that the Fourteenth Amendment requires proportional representation of all the component ethnic groups of the community on every jury ignores the facts. The petitioner did not seek proportional representation, nor did he claim a right to have persons of Mexican descent sit on the particular juries which he faced. His only claim is the right to be indicted and tried by juries from which all members of his class are not systematically excluded —juries selected from among all qualified persons regardless of national origin or descent. To this much, he is entitled by the Constitution. (Emphasis added.)

And in *Cassell,* speaking through Mr. Justice Reed:

Acting under the Texas statutes, the Dallas County grand-jury commissioners chose a list of sixteen males for this September 1947 grand jury from citizens eligible under the statute. The judge chose twelve of these for the panel. *No challenge is now made to the fairness of this statutory system. We have approved it.* (Emphasis added.)

And in *Akins,* speaking through Mr. Justice Reed:

*The regular statutory practice for the selection of grand jurors was followed in this case.* Under the Texas statutes jury commissioners appointed by the judge of the trial court select a list of sixteen grand-jurymen from which list twelve are chosen as a grand jury. Texas Code of Criminal Procedure, Articles 333, 337, Vernon's Ann.C.P. arts. 333, 337. Qualifications for grand-jurymen are set out in

Article 339. The Commissioners are instructed by the court as to their duties. Art. 366. This method of selection leaves a wide range of choice to the commissioners. Its validity, however, has been accepted by this Court. Smith v. Texas, supra, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84. Petitioner does not attack it now. Its alternative would be a list composed of all eligibles within the trial court's jurisdiction and selection of the panel by lot.

Petitioner's sole objection to the grand jury is that the "commissioners deliberately, intentionally and purposely limited the number of the Negro race that should be selected on said grand jury panel to one member." Fairness in selection has never been held to require proportional representation of races upon a jury. Virginia v. Rives, 100 U.S. 313, 322–23, 25 L.Ed. 667; Thomas v. Texas, 212 U.S. 278, 282, 29 S.Ct. 393, 53 L.Ed. 512. Purposeful discrimination is not sustained by a showing that on a single grand jury the number of members of one race is less than that race's proportion of the eligible individuals. The number of our races and nationalities stands in the way of evolution of such a conception of due process or equal protection. Defendants under our criminal statutes are not entitled to demand representatives of their racial inheritance upon juries before whom they are tried. But such defendants are entitled to require that those who are trusted with jury selection shall not pursue a course of conduct which results in discrimination "in the selection of jurors on racial grounds." Hill v. Texas, supra, 404, 62 S.Ct. 1161, 86 L.Ed. 1559. Our directions that indictments be quashed when Negroes, although numerous in the community, were excluded from grand jury lists have been based on the theory that their continual exclusion indicated discrimination and not on the theory that racial groups must be recognized. Norris v. Ala-

bama [294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074] *supra;* Hill v. Texas, *supra;* Smith v. Texas, *supra.* The mere fact of inequality in the number selected does not in itself show discrimination. A purpose to discriminate must be present which may be proven by systematic exclusion of eligible jurymen of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination. Cf. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497. Any such discrimination which affects an accused will make his conviction unlawful.

The history and record of this case gives evidence that the courts of Texas which are charged with the trial of petitioner endeavored to comply with the federal constitutional requirements as to the selection of grand juries, according to the interpretation of this Court in Hill v. Texas, *supra.* Not only did the Court of Criminal Appeals reverse a former conviction of petitioner on its authority but the judge, now deceased, of the criminal district court of Dallas instructed the three jury commissioners, who selected this grand jury list, as testified to by each of them, that there should be no discrimination against anyone because of his color. (Emphasis added.) And in *Smith*, speaking through Mr. Justice Black:

Here, *the Texas statutory scheme is not in itself unfair; it is capable of being carried out with no racial discrimination whatsoever.* But by reason of the wide discretion permissible in the various steps of the plan, it is equally capable of being applied in such a manner as practically to proscribe any group thought by the law's administrators to be undesirable. (Emphasis added.)

The attacks on the statutes have been somewhat emasculated since the suit was filed in 1968. Article 19.01 still contains the freeholder requirement for jury commissioners, but such requirement is directory and not mandatory.

Cantu v. State (1940), 141 Tex.Cr.R. 99, 135 S.W.2d 705, certiorari denied 312 U.S. 689, 61 S.Ct. 617, 85 L.Ed. 1126; Bryant v. State (1924), 97 Tex.Cr.R. 11, 260 S.W. 598. But Article 19.08, as amended by the 61st Legislature, effective September 1, 1969, contains neither a freeholder nor householder requirement as a qualification for grand jurors.

There may be better ways to operate the jury system in Texas. The system can be improved. But we cannot, on this record, hold the statutes unconstitutional. We urge the plaintiffs-appellants to pursue their constitutional right of petition.

■ Plaintiffs-appellants have failed to sustain a substantial constitutional question prerequisite to the designation of a statutory three-judge court. The case was properly decided by a single judge and the judgment is affirmed.

## APPENDIX

*Article 19.01* [*333*] [*384*] [*372*] *Appointment of jury commissioners*

The district judge, at or during any term of court, shall appoint not less than three, nor more than five persons to perform the duties of jury commissioners, and shall cause the sheriff to notify them of their appointment, and when and where they are to appear. The district judge shall, in the order appointing such commissioners, designate whether such commissioners shall serve during the term at which selected or for the next succeeding term. Such commissioners, shall receive as compensation for each day or part thereof they may serve the sum of Ten Dollars, and they shall possess the following qualifications:

1. Be intelligent citizens of the county and able to read and write the English language;

2. Be qualified jurors and freeholders in the county;

3. Have no suit in said court which requires intervention of a jury;

4. Be residents of different portions of the county; and

5. The same person shall not act as jury commissioner more than once in the same year. Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722.

*Art. 19.04* [*336*] [*387*] [*375*] *Instructed*

The jury commissioners, after they have been organized and sworn, shall be instructed by the judge in their duties and shall then retire in charge of the sheriff to a suitable room to be secured by the sheriff for that purpose. The clerk shall furnish them the necessary stationery, the names of those appearing from the records of the court to be exempt or disqualified from serving on the jury at each term, and the last assessment roll of the county. Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722.

*Art. 19.08* [*339*] [*390*] [*378*] *Qualifications*

No person shall be selected or serve as a grand juror who does not possess the following qualifications:

1. He must be a citizen of the state, and of the county in which he is to serve, and be qualified under the Constitution and laws to vote in said county, provided that his failure to pay a poll tax or register to vote shall not be held to disqualify him in this instance;

2. He must be of sound mind and good moral character;

3. He must be able to read and write;

4. He must not have been convicted of any felony;

5. He must not be under indictment or other legal accusation for theft or of any felony.

Amended by Acts 1969, 61st Leg., p. 1364, ch. 412, § 5, eff. Sept. 1, 1969.

WISDOM, Circuit Judge (dissenting):

I respectfully dissent.

The requirement that jury commissioners be freeholders is an anachronism offensive to the United States Constitution. "Lines drawn on the basis of wealth or property, like those of race * * * are traditionally disfavored".

Harper v. Virginia State Board of Elections, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169. The exclusion of non-freeholders is an irrational classification, in that it excludes all persons, many eminently qualified, who prefer to rent rather than own their homes. The exclusion of non-freeholders serves no compelling state interest. *See* Kramer v. Union Free School District, 1969, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; Cipriano v. City of Houma, 1969, 395 U. S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; Stewart v. Parish School Board of St. Charles, E.D.La.1970, 310 F.Supp. 1172.

I would hold that, on its face, Article 19.01 is repugnant to both the equal protection and due process clauses of the Fourteenth Amendment.