### CLIFTON BUTLER v. THE STATE.

No. 899. Decided January 25, 1911.

Rehearing Denied February 15, 1911.

**1.—Murder—Evidence—Bullet.**

　　Where, upon trial of murder, the evidence sufficiently showed that the bullet offered in evidence was the one which came from the body of the deceased, there was no error in offering the same in evidence.

**2.—Same—Evidence—Cartridge.**

Where, upon trial of murder, the evidence showed that the shells which were found at the scene of the homicide the next morning fitted certain bullets which came out of a 32-shell automatic pistol, and that the bullet marks in the tree from which the same had been extracted were fresh, and·all these things came from the proper custody, there was no error in introducing them in evidence; this testimony connecting up with other circumstances in evidence.

**3.—Same—Evidence—Reputation of Defendant—Cross-Examination—Impeachment.**

Where, upon trial of murder, several witnesses testified for the defendant as to his general reputation for peace, there was no error in permitting the county attorney to try to weaken the effect of this testimony on cross-examination, by asking said witnesses whether they had not heard of defendant's carrying a pistol and going around threatening people, etc., and which they answered in the negative, besides it was shown that there was a basis for the question asked by the county attorney.

**4.—Same—Evidence—Impeachment—Cross-Examination.**

Upon trial of murder, where a witness denied that the defendant was present during a certain conversation between his codefendant and others, with reference to certain threats made by said codefendant, there was no error in permitting the State to introduce in evidence a former written statement made by the witness, in which she said that defendant was present during said conversation; and this although such statement was made by said witness while in jail, she not being charged with any crime.

**5.—Same—Motive—Sufficiency of the Evidence—Murder in the First Degree.**

Where, upon trial of murder, the defendant was convicted of murder in the first degree and the facts of the killing showed that the homicide was committed with malice aforethought, it is not necessary that the evidence should disclose a motive on the part of the defendant.

Appeal from the District Court of Grayson. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case. See Mingo v. State, 61 Texas Crim. Rep., 14.

*H. D. Cumby,* for appellant.—On the question of express malice: McCoy v. State, 25 Texas, 33; Farrer v. State, 42 Texas, 265.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for murder, the punishment being assessed at life imprisonment in the penitentiary.

1. A bill of exception recites that the witness Hughes testified that he had in his possession a bullet which he had procured from W. H. Halton, an undertaker, of Denison; that the bullet had been in his possession since it was turned over by Mr. Halton and was in the same condition as when delivered to him by Halton. Halton testified that he removed from the body of the deceased a bullet, which he turned over to Hughes, the constable, and that the bullet exhibited to him is the same bullet. The bill further recites that after said

bullet had been thus identified and its custody accounted for in the manner above detailed, the State offered the same in evidence before the jury and it was introduced for the inspection and consideration of the jury. The objection urged to this was that it had not been shown by the testimony that defendant owned or had in his possession a pistol which shot the character of bullet offered, and it had not been shown that since the day of the homicide that the bullet had been in legal and proper custody, and had not been shown that said bullet was the one removed from the body of deceased; and because said bullet would be irrelevant and immaterial and its introduction in evidence would mislead the jury and prejudice the rights of defendant, and create in the minds of the jury the impression that the defendant shot into the body of the deceased the bullet so offered, when it was not sufficiently shown by the testimony that the defendant had in his possession or owned a pistol which shot the character of bullet introduced in evidence. These objections are not stated as facts or verified by the court as facts, but are simply grounds of objection urged by defendant. We are of opinion that, taking the testimony as stated in the bill, it is sufficiently shown that the bullet was the bullet that came from the body of deceased and therefore admissible as evidence. The ground of objection that it was not shown that appellant had such a pistol is not stated as a fact, and on this phase of the bill the evidence may have shown conclusively that appellant did own such a pistol, and further, the evidence may have shown that appellant did the killing and was the only party who did any firing, and if we might speculate, if other parties were involved in the difficulty, yet if appellant was present, aiding and assisting in it, he would be responsible for the homicide whether he fired that particular shot or not. We do not think there was any error in these contentions as the bill of exceptions presents the matter.

2. Another bill recites that the witness Hughes testified that on the morning after the shooting of Wesley Higdon, and near the scene of the shooting, he picked up from the ground seven empty hulls of the kind used in a 32-automatic pistol, and had cut from a bois d'arc tree, near the scene of the shooting, two steel bullets of the kind shot from 32-shells used in an automatic pistol; that since the shells and hulls came into his possession in the manner above detailed he had retained them in his custody and brought them to court. This testimony was offered to the jury and permitted to go before them as evidence. Appellant objected to this testimony and inspection of the shells and bullets by the jury, because same would be irrelevant and immaterial to any issue in the case; would be in the nature of hearsay and prejudicial to the rights of defendant, and because it had not been sufficiently shown by the testimony when said bullets were shot into the tree, whether before or after the alleged killing of the deceased, and further objection was urged that it had not been

shown by the evidence that said shells were ejected from the pistol owned by the defendant, or thrown upon the ground by some other person. The court qualified the bill as follows: "The witness Hughes testified that the bullet marks on the tree had the appearance of being fresh; that the hulls had the appearance of being recently exploded; that the bullets were such as would fit the shells. C. L. Stubblefield testified that he was present just before the shooting and saw two parties lying near a hedge extending westward from this tree; that said parties were near said hedge and about eight feet west of said tree, and that said tree was about five feet from where deceased was standing and northwest of the deceased at the time of the shooting." The objections of appellant are not well taken. It seems from the facts stated in the bill that these shells were found at the scene of the homicide next morning, and that the bullet marks in the tree were fresh, and under the statement of the judge in qualifying the bill, appellant and another party were placed at the scene of the homicide, which, we think, sufficiently connects up the matters introduced and to which exceptions were reserved, and they were properly admissible. They were facts evidently connected with the homicide, and as circumstances were admissible before the jury for what they were worth.

3. Another bill shows that several witnesses testified that they had known defendant for a period of years—some of them that they had known him two or three years—others that they had known him seven or eight years; that they were acquainted with his general reputation in the community in which he resided as being a peaceable, lawabiding citizen, and that such reputation was good. On cross-examination of these witnesses, the county attorney asked: "Q. From this talk you have heard you concluded that he has a good, general reputation. You had not heard at that time anything about his living down there with a little sporting woman named Ida Edwards at the house where Fluffy Ruffles live, and where another woman called Dirty Legs?" The witness answered in the negative. The county attorney further asked: "Q. You had not heard of his taking an automatic pistol in his hand, and chasing up Myrick Avenue and following a party of boys going to prayer meeting, and drawing an automatic pistol from his pocket, or having it in his hand, and stating to those boys that someone had thrown a rock or something into the window at the Rich house and struck him, and asking them if they did it, and saying, 'By God, he would find the son-of-a-bitch who did it and kill him before morning?'" The witness answered in the negative. He again asked: "Q. You never heard of him being a pistol 'toter' and going around threatening people's lives for interrupting him down at the house of his woman?" The witness again responded in the negative. He again asked: "Q. If you had heard of his doing that way, you would not say he had a good reputation for being a peaceable, lawabiding citizen?" to which the witness responded in the negative. Objection was urged to all of this because hearsay,

irrelevant, immaterial and prejudicial to the rights of defendant; and further, that there was no proof in the case which warranted the asking of such questions, the questions themselves stating matter which had not been proven in the case. The court qualified this by stating that the witness Ida Edwards testified that she had been once an inmate of a home for fallen women at Pilot Point; that prior to the trial she was in a similar place at Dallas; that she admitted to the sheriff that she made her living by prostitution while she lived with Mrs. Rich; that she and Lela Ramsey were the only girls there, and that Lela and Allie Mingo, a man, occupied the same room at Mrs. Rich's; that she and the defendant were "friends," and that he did not stay there at night, but came there often; that she did not tell him about talking to another man. That Hollis testified that he, John Apple, Oscar Heath and Eugene Heath passed by the Rich house three nights before the shooting on their way to prayer meeting, and that as they passed north along Myrick Avenue they heard some falling glass; that after they had gone four or five blocks two parties came up and asked them if they threw into the window at Mrs. Rich's and hit Butler; that one of them, the larger one, had an automatic pistol and exhibited it; that they told him they did not throw into the house and that the party said that By God, he would find the fellow who did it before morning and shoot him. That Heath testified he was with Hollis at the time and that the party who had the pistol and made the statement was the defendant. That Lee Hollis also testified in this connection, that he did not know the defendant, but Heath said it was "Butler." Being cross-examined Hollis said at another time it was Arch Butler. On redirect he testified he was not sure whether it was Cliff or Arch Butler. This is the qualification of the judge. In the first place, appellant is not in any condition to complain, we think, of the answers of the witnesses because they were in the negative. They each stated in response to the questions that he had not heard of these matters. It was but the failure on the part of the witnesses to give testimony that was adverse to appellant. In other words, the county attorney was seeking to show by these witnesses that these matters on the part of appellant had occurred and he was weakening the effect of their testimony establishing the good reputation, but failed to do so. From this standpoint we are of opinion that there was no injury and there was no error shown in the bill; but in the next place, taken in connection with the qualification of the judge it is shown there was a basis for the questions asked by the county attorney. As before stated, there was no damaging testimony elicited, and, in fact, nothing but a denial of the knowledge of those facts. The county attorney, we think, was justified in asking the questions, in view of some of the testimony which is cited in the qualification of the judge, but there is no objection urged in this bill, or in the record to the introduction of the testimony of Ida Edwards and Heath and Hollis.

As the bill presents this matter, there is nothing of which appellant can complain.

4.   Another bill recites that while Ida Edwards was on the witness stand the county attorney introduced in evidence the following portion of a statement by her: "I know Allie Mingo and Cliff Butler. They were at our house long about six o'clock yesterday afternoon. Allie Mingo and Cliff Butler were in the front room.   I was in the room back of the front room.   The room I was in adjoined the front room where they were.   There is a door between these two rooms. It (the door) was open.   I heard them talking.   One of them said, 'We will lay for him tonight and shoot him.'   They said he was the one who had been rocking the house."   Objection was urged to this on the ground that it was immaterial, irrelevant, and a statement made by the witness while in jail, and in the custody of the law and the statement taken for the purpose of contradicting the witness. And further, that the witness was introduced at the preliminary trial of this defendant at Denison, Texas, by the State, and thereafter while in the county jail as a witness to testify against this defendant, made said statement.   And further, that the State did not offer the entire statement of the witness and a portion of it would not be admissible.   It seems that this witness was placed on the stand by defendant and this was upon the cross-examination.   There is a qualification by the judge to this in which it is stated that on cross-examination the witness was asked if the defendant was not present with Mrs. Rich and Allie Mingo at the time Mrs. Rich and Mingo talked about the killing the party referred to and she said he was not.   She was asked by State's counsel if she did not on the day after the shooting sign a written statement at the jail containing, among other things, the statement complained of in the bill and she denied it.   The county attorney offered that portion of the statement set out in the bill.   The witness had admitted her signature to the statement and the county attorney testified that it is the identical statement made by the witness and correctly written down by him at the time and signed by her and that it had not been changed.   The court in his charge limited this matter to impeachment.   We think this testimony was admissible for the purpose of impeaching the witness Ida Edwards and it was on a material question.   She had denied that the defendant was present when he and the other witness made the remarks with reference to shooting the party and this statement that she made was contradictory.   It was elicited on the cross-examination; the witness was defendant's witness and this was a legitimate manner for impeaching the witness by the State and the fact that she was in jail, we think, would not be any reason why she could not be impeached as a witness.   There is nothing to indicate that she was charged with the crime, and in fact it was indicated that she was not.   The court, as above stated,

limited this to its proper office of impeachment, and we are of opinion that the bill does not show any error.

5. The remaining complaint is that the evidence is insufficient to support the conviction of murder in the first degree. We have carefully examined the facts in this record, and have reached the conclusion that upon this ground the appellant is not entitled to a reversal. The evidence discloses that the homicide occurred about dark; that appellant and Allie Mingo, an Indian boy about grown, were lying near a bois d'arc hedge. The deceased and his friend Stubblefield had alighted from an engine and crossed the street, and were standing not far distant from where appellant and Mingo were lying down. While standing there seven shots were fired from a pistol supposed to be of an automatic character. One of the balls entered the body of the deceased just inside of the top of the hip, passing into the body, which produced the fatal result. There is no serious question that appellant and Mingo were together, and that one of them fired the shots. There was a slight intermission between the firing of the shots; some of the shots were fired rapidly, then an intermission, and then the remainder of the shots were fired. There seems to have been time sufficiently elapsing between the firing of the first and second batches of shots for them to have changed hands with the pistol, but whether this was so or not, the parties were together, and the killing was done without any necessity, reason or cause for it so far as. this record discloses. Two or three days prior to the homicide, the evidence discloses further, somebody had thrown rocks at the house where appellant kept his mistress and Mingo also had his mistress; that they became infuriated and followed some young men up the street and inquired if they had thrown the rocks. This they denied, and appellant remarked that he would ascertain who did it and kill the damn son-of-a-bitch. It appears from the evidence that he was on the lookout for a party whom he thought had thrown the rocks, and it is shown also that the house had rocks thrown at it on more than one occasion. Appellant's contention that the case is not one of murder in the first degree seems predicated upon the fact that no motive was shown. Motive is not always necessary. Where the facts of the killing are shown, and the circumstances indicate that it was done with malice aforethought, and the circumstances raised it to the degree of murder in the first degree, it is not necessary, to sustain the conviction, that a motive be shown. If appellant killed this boy, believing he was the person who rocked the house, then the evidence is ample as to motive. But in any event, appellant had seen Stubblefield and the deceased get off the engine just a few moments, or a very short time before the homicide, and had turned away and left them and had gone to the place where they were lying down behind the hedge when Stubblefield and deceased came along and the killing occurred. Without going into a detailed statement further than the above, we

are of opinion that the jury were justified in reaching the conclusion arrived at by their verdict.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

[Rehearing denied February 15, 1911.—Reporter.]