El Pueblo, Demandante y Apelado, *v.* Rivera, Acusado y Apelante.

Apelación procedente de la Corte de Distrito de San Juan, Sección Segunda, en causa por delito de asesinato en primer grado.

No. 1134.—Resuelto en julio 28, 1917.

Asesinato en Primer Grado—Acusación—Juramento—Falta de Objeción.— A falta de objeción, que debe hacerse en la corte inferior y no por primera vez en apelación, es suficiente el juramento de una acusación en que el Fiscal expresa que está basada en el testimonio de testigos examinados bajo juramento y que cree solemnemente que existe justa causa para presentarla al tribunal.

Id.—Malicia, Premeditación y Deliberación—Móvil de Crimen.—El gobierno no tiene obligación alguna de establecer el móvil para la comisión del delito si es que claramente aparece que el acusado fué el autor del mismo con malicia y después de premeditado y deliberado.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Ignacio Carballeira.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

El Juez Asociado Sr. Hutchison emitió la opinión del tribunal.

El apelante fué convicto de asesinato en primer grado en virtud de una acusación que le imputaba los actos siguientes:

"El citado Juan Rivera Quiñones en época anterior a la presentación de esta acusación, o sea, allá el día 20 de septiembre de 1915 en Vega Alta que forma parte del Distrito Judicial de San Juan, Puerto Rico, ilegal, voluntaria y maliciosamente, de una manera alevosa, con malicia premeditada y propósito deliberado y decidido de darle muerte, acometió y agredió con una navaja barbera a Juan Seijo Morales infiriéndole varias heridas, una de ellas sobre la superficie lateral derecha y frontal del cuello, con división de la laringe que le produjo la muerte a los pocos días."

En el alegato no se ha hecho señalamiento de errores específicos, pero se sostiene que la prueba no demuestra la existencia de malicia, premeditación y deliberación necesarias para sostener la sentencia.

Se ha sugerido también que la acusación es defectuosa en cuanto a que no se cumple con los preceptos del artículo tres

del Código de Enjuiciamiento Criminal que prescribe que la misma será suficiente si en ella se expresa que la acusación se funda en las declaraciones de testigos juramentados por el fiscal o las declaraciones de testigos examinados ante un juez instructor y que el fiscal cree solemnemente que existe justa causa para formular la acusación. En el presente caso el Fiscal hace constar en su *affidavit* que la acusación se funda en el testimonio de testigos examinados bajo juramento y que el fiscal solemnemente cree que hay justa causa para presentar la acusación. A falta de objeción que debió haberse hecho en la corte inferior, creemos que esto era suficiente y que la sugestión que se ha hecho por primera vez en apelación viene muy tarde. *El Pueblo* v. *Rodríguez,* 12 D. P. R. 181; *El Pueblo* v. *París,* (pág. 111).

Aunque no se tomaron excepciones a las instrucciones dadas por el juez sentenciador, nosotros las hemos examinado y estimamos que no solamente no pueden ser seriamente objetadas sino que son excepcionalmente claras, bien contrapesadas e imparciales, tanto al hacer el sumario de la prueba como al explicar los principios de derecho a que tenía que atemperarse el jurado en sus deliberaciones.

Juan Seijo Morales, además de dedicarse a revender tonterías, alquilaba catres y daba posada a la gente. El acusado se presentó una tarde y le dió un dinero, ya para pagarle una cuenta que le debía según manifestación de uno de los testigos o en pago de un catre por una noche según manifestaciones de otro de los testigos. Parece que el alquiler del catre por una noche valía cosa de diez centavos. Como a la media noche Seijo Morales recibió heridas que posteriormente le fueron fatales. El acusado, cuando se le arrestó, estando descalzo, pocas horas después en un pueblo vecino, confesó lo había matado explicando que durante la noche cuatro hombres le habían atacado; que sacando una navaja barbera que portaba encima y defendiéndose como pudo, cejando ante sus agresores, fué empujado hasta el dormitorio de Seijo Morales, y allí tirando a diestro y siniestro en defensa propia, infirió las

heridas sin intención alguna de matar a Seijo Morales. En
la cama en que dormía Seijo Morales había una almohada te-
ñida de sangre. Una colchoneta con manchas de sangre en
una punta y una sábana estaban en el suelo al lado de la
cama. La herida más grave fué la que empezaba en la nuez
de Adán, que interesaba la laringe fraccionando determinados
vasos sanguíneos del cuello y que terminaba por encima del
proceso mastoideo; herida que pudo haber sido inferida al in-
terfecto por un hombre zurdo que lo agrediera por detrás.
El acusado era zurdo; y era suyo un zapato que se encontró
en la habitación inmediata y que comunicaba con la otra en
la que se hallaron las mencionadas piezas de ropa manchadas
de sangre, cerca de una cama desarreglada y el otro en la calle;
la navaja también manchada de sangre se encontró en una
u otra de estas dos habitaciones y además el acusado fué visto
pocos minutos después de la tragedia corriendo en ropas me-
nores, y llevando su ropa exterior y un paraguas en las manos.
Existe evidencia que establece que Seijo Morales tenía un ca-
tarro; que al obscurecer el acusado, un vendedor de patenti-
zados le ofreció un brevaje que contenía un líquido para que
lo oliera cuando se fuera a acostar, diciendo que era bueno
para el catarro, y que el remedio de ese modo prescrito fué
tomado según sus indicaciones. Seijo Morales antes de mo-
rir dijo que estaba dormido en su cama cuando recibió la pri-
mera herida en la garganta y que las demás se las infirieron
cuando se levantaba y se dirigía a la puerta que da a la calle.
Se le encontró fuera de esta puerta, y existe prueba tendente
a demostrar que a la mañana siguiente se encontró en la cu-
neta un potecito o botella que contenía cloroformo. Si el ju-
rado creyó la prueba respecto a estas materias, como eviden-
temente lo hizo, las circunstancias justificaron la conclusión
a que llegó el jurado respecto a la malicia, premeditación y
deliberación.

El motivo no aparece claro pero en esta clase de asuntos
esto no es poco común, y el Gobierno no tiene obligación alguna
de establecer una causa o razón adecuada para la comisión del

delito si es que claramente aparece que el acusado fué el autor de la muerte con malicia y después de premeditado y deliberado.   I. Wharton's Criminal Law, pár. 419, p. 594; II. Wharton's Criminal Evidence, p. 1643, pár. 877 *et seq.;* 13 R. C. L. 746, pár. 51; *People* v. *Durrant,* 116 Cal. 207; *Buller* v. *State,* 134 S. W. 230; *House* v. *State,* 21 L. R. A. (N. S.) 840; *People* v. *Enright. Ann. Cases,* 1913, E. 318.

Sería inútil relacionar aquí toda la prueba.   Hemos examinado cuidadosamente todo el *récord,* y estimamos que el veredicto está ampliamente sostenido por la prueba.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.