# MAY 24, 1939

MORRIS ANTNER V. THE STATE.

No. 20059. Delivered March 8, 1939.
Rehearing Denied May 24, 1939.

The opinion states the case.

*Rogers & Spurlock* and *Myres & Myres*, all of Fort Worth, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is keeping a place to gamble; the punishment is confinement in the state penitentiary for a term of two years.

The indictment contained two counts. In the first count it was charged that on the 29th day of May, 1937, Morris Antner did, in Tarrant County, Texas, unlawfully keep and exhibit, for the purpose of gaming, a gaming table, bank, etc. In the second count he was charged with keeping and being then and there interested in keeping a certain building, room and place there situate, for the purpose of being used as a place to bet and wager, and to gamble with cards and dice, then and there played; and a place where people did then and there resort to gamble, bet and wager on games played with cards, dice, etc.

The indictment was predicated upon Art. 625, P. C., the pertinent parts thereof reading as follows: "If any person shall keep, or be in any manner interested in keeping any premises, building, room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice or dominoes, or to keep or to exhibit for the purpose of gaming, any bank, table, alley, machine, wheel or device whatsoever, or as a place where people resort to gamble, bet or wager upon anything whatever, he shall be confined in the penitentiary not less than two nor more than four years, * * *."

The court submitted the case to the jury on the second count alone.

Appellant contends that the evidence may be sufficient to show him guilty of some offense but not of the offense charged, in that there was no evidence that he was the keeper of, or was in any manner interested in, the keeping of a room or place for the purpose of being used as a place to bet or wager, or to gamble with cards, dice or dominoes.

The State's testimony shows that appellant had rented a two story building located at 701 Main St., in the City of Ft. Worth; that he conducted a restaurant and beer parlor in the lower floor, and that the upper floor was divided into two rooms. The front room, the room where people entered, was a lounging room. It was in the rear room that people resorted to gamble. At least a game with dice was in progress on the night in question with Omar Smith banking the game. The raiding officers took charge of the gaming paraphernalia which consisted of tables, green cloth with numbers thereon, such as are commonly used in gaming houses, a dice rake, a buck and some dice, and about $280 in money. In the room over the door was an electric bell connected to a wire which led to the ground floor where two push buttons were attached, one near a victrola and another under the counter. By pressing either of these buttons, the bell would ring and sound the alarm. On the night in question when the officers entered the beer parlor, appellant immediately pressed the button located near the victrola. Mr. Dysart, an inspector of the police department, testified that a few days prior to the night in question, and on several prior occasions, he told appellant that he had heard that there was gambling going on up in his building. That on each occasion appellant told him he would stop it. Some time prior to the night in question appellant, at his own expense, had the upper story of the building remodeled, refinished and furnished. He also had a telephone placed in the upper story of the building.

Agnes Downs testified that she worked for appellant about a year. That for a month or more prior to the night in question she saw Omar Smith go into the back room almost every night. That the place would sometimes close at four or five in the morning.

We deem the evidence sufficient to sustain the conviction. Appellant virtually admitted to the inspector on several occasions prior to the night in question that he was interested in keeping the room, or place for the purpose of being used as a place to gamble, because when he was accused of it, he said he would stop it. We think the facts of this case are even stronger than the facts proved in the case of Spears v. State, 4 S. W. (2d), 979; McFaddin v. State, 46 S. W. (2d), 307); Shoope v. State, 38 S. W. (2d), 793. In each of these cases, the conviction was upheld.

Bill of exceptions number one reflects the following occurrence. T. A. White, a witness for the defendant, testified

that he was in the room of appellant's place on the night in question; that he did not shoot any dice; that he did have two crooked dice in his pocket when he was arrested and taken to the police station; that he did not tell Inspector Dysart, when these dice were taken from him that night, that he had taken them from the table when the officers appeared on the scene. Mr. Dysart was then recalled by the State and testified that T. A. White had told him at the City Hall on the night in question that he picked up the dice from the table when the officers appeared. Appellant objected to the testimony of Dysart on the ground that appellant was not present during said conversation, and further that the witness and appellant were under arrest at the time. The court qualified said bill, and in his qualifications states that he admitted said testimony as impeaching testimony and instructed the jury that they could only consider it for the purpose of impeaching the witness, White. We are of the opinion that the testimony was admissible for the purpose for which it was admitted.

By bill of exception number two, appellant complains of the testimony given by Inspector Dysart to the effect that on several occasions prior to the night in question he told appellant that he had heard of gambling going on in his building and that appellant had replied that he would stop it. The court qualified the bill, and his qualification shows that he sustained appellant's objection as to the reports which the witness had received as to gambling in appellant's place. Nevertheless appellant reserved an exception. We see no error in the court's ruling. Suppose the officer had told him: "I have reports from various sources that you are running a gambling room in the second story of your building. What about it?" and appellant had replied "I am." It strikes us that both the question and the answer would have been admissible as a confession of guilt. The answer in the instant case was in the nature of a confession. It could mean nothing else. See Butler v. State. 61 Tex. Crim. Rep., 133; 134 S. W., 230; Hawkins v. State, 27 Tex. Crim. Rep., 273; 11 S. W., 409.

By bills numbers three and four, appellant complains of the court's action in declining to sustain his motion for a peremptory instruction of "Not Guilty." Under the evidence he was not entitled to such an instruction.

Appellant, in his motion for a new trial, alleged misconduct of the jury and supported the same by the affidavit of one of the jurors. The State controverted the alleged miscon-

duct and supported its controverting plea by the affidavit of ten of said jurors denying the matters alleged in the affidavit of the juror. It appears from the order of the court overruling the motion that the court heard testimony relative thereto, but the same is not brought forward in a statement of facts or otherwise. It will be noted, moreover, that an issue was formed which the court decided adversely to appellant. In the absence of testimony relative thereto, we are not in a position to say that the trial court committed error in overruling the motion. The trial court must have found that no such statement was made by the juror as set forth in the motion. See Whitfield v. State, 282 S. W., 595; Harrison v. State, 283 S. W., 173.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant contends that if he be guilty of any criminal offense it would not be for the one herein charged, but would be guilty of the offense of permitting gaming on premises controlled by him, and cites as evidence thereof the testimony of appellant's wife, who testified that she had on the date alleged in the indictment, rented the room in which the gaming occurred to one Omar Smith, who was using this room for the purpose of gaming. Evidently, however, the jury refused to accept this version of the occurrence, and predicated its verdict upon the testimony of other witnesses. For instance, the testimony of Agnes Downs, who worked as a waitress at the establishment of appellant, showed the following: "During the month that I knew him (Omar Smith) there prior to this raid, except for a short time, I saw him there nightly, and each night that I saw him there he was in and out of this partitioned-off room from time to time. Sometimes Smith would stay there until we closed, and sometimes he would leave before we closed. The place sometimes closed about three o'clock, and sometimes it was four in the morning. Sometimes it was four or five, whenever the crowd left."

We are impressed with the fact that if the jury believed

the above testimony, it would be destructive of the effect of the testimony of appellant's wife wherein she claimed that Omar Smith, whom she had never seen before, came to her on the afternoon of the day of the raid and rented this room for the purpose of giving a party for some friends of his. Taken into consideration with the push button, operated by the appellant on the night of the raid, his statement to the officer relative to gambling at this establishment, as well as the tools of trade found therein such as a table with a cover thereon marked for the purposes of playing with dice, rakes, etc.,—it seems to us that the jury had sufficient proof upon which to say that appellant was keeping and interested in keeping a certain room or place for the purpose of betting and wagering with cards and dice. It will be noted that appellant's wife did not attribute the possession or ownership of such paraphernalia to be in Omar Smith, and we think the jury were justified in concluding that same was the property of and furnished by appellant.

We think the motion should be overruled, and it is so ordered.