ROBERT F. BLAKE v. THE STATE.

No. 11408.   Delivered April 18, 1928.
Rehearing denied June 23, 1928.

The opinion states the case.

Brief for appellant unsigned. Attorneys not known to reporter.

*Meade F. Griffiths,* District Attorney, *D. H. Cueton, Dennis Zimmerman* and *A. A. Dawson* of Canton, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at death.

The circumstantial evidence and the direct evidence, consisting of the admission and confession of the appellant, are quite sufficient to support the jury's finding that the appellant shot and killed the deceased and robbed him. His principal defense was insanity due to the excessive use of narcotics.

Bill of Exceptions No. 1 relates to the action of the court in declining to continue the preliminary hearing upon the issue of present insanity. Upon that hearing, which took place on the 25th of May, the jury found appellant to be sane. From that proceeding no appeal lies to this court, and for that reason a discussion of the motion mentioned is not deemed necessary. See Darnell v. State, 24 Tex. Crim. App. 6; Millikin v. Jeffrey, 299 S. W. Rep. 435; Ex parte Millikin, 299 S. W. Rep. 433. On the call of the case for trial, appellant again presented the same motion for a continuance. All these matters are embraced in Bill of Exceptions No. 1, and the complaint is, that in refusing to postpone the hearing of the motion upon the preliminary inquiry of insanity and in refusing to continue the case upon the main trial because of the absence of Bill Buckland and Doctor Walcott, both of whom resided at Amarillo, there was error committed. In the motion it is averred that they were temporarily absent from the state; that the witness Buckland, about a week before the insanity trial, while in the office of the appellant's attorney in Amarillo, Potter County, Texas, promised to be present; that a like conversation was had with the witness Doctor Walcott, who also resided at a certain address in Amarillo. A subpoena appears to have been issued for Buckland on the 20th of May, which was returned not executed upon the same day. On the 19th of May, a subpoena was issued for Doctor Walcott and returned not executed as to him on the 20th of May. The testimony expected from the witness Buckland was that the appellant was in California in the summer of 1925 and up to near the middle of July, and further that the appellant was a morphine addict. By the doctor mentioned the proof expected was that he was acquainted with the appellant and his family and that the appellant was a victim of morphinism or morphinomania, and that such habits have frequently caused insanity. Amarillo is the county seat of Potter County, which is about fifty-five miles distant from the place at which the appellant was tried. If, after the subpoenas were returned not executed on May 20th, there were efforts made to ascertain the whereabouts of the witnesses who had been temporarily absent from their homes, we have failed to perceive it from the record. The insanity trial was had on the 25th of May, the main trial began on the 27th of that month, and the charge was given to the jury on the 31st. Attachments were requested at the time the main trial began, but as to the disposition of the attachments the record appears to be silent. Under the statute (Art. 543, C. C. P.,

1925) diligence is essential. Taking account of the fact that in a case where the defense is insanity the law tolerates some relaxation of the rule touching diligence, the showing in the present instance is not deemed sufficient to show that in overruling the motion the learned trial judge abused his discretion. Some recent cases are Toussaint v. State, 92 Tex. Crim. Rep. 374; Hill v. State, 98 Tex. Crim. Rep. 227; Hornsby v. State, 91 Tex. Crim. Rep. 166; Laughlin v. State, 97 Tex. Crim. Rep. 372; Weaver v. State, 98 Tex. Crim. Rep. 476; Boxley v. State, 100 Tex. Crim. Rep. 338; Bernson v. State, 106 Tex. Crim. Rep. 648; Huffman v. State, 107 Tex. Crim. Rep. 190; Rice v. State, 107 Tex. Crim. Rep. 284; and other cases collated in Vernon's Ann. Tex. C. C. P., 1925, Vol. 1, p. 435. We will add that the testimony of Buckland touching the absence of the appellant, in view of the record showing that he was not absent at the time of the homicide, is not of prime importance. Buckland's testimony, as well as that of the absent witness, Doctor Walcott, so far as it went to show that the appellant was a narcotic addict, was cumulative upon an issue which was not seriously controverted. From the explanation of the appellant's bill of exceptions, it appears that on the insanity trial it was admitted that the appellant was a narcotic addict. On the main trial, in the confession of the appellant introduced by the State, the appellant said:

"I was a narcotic addict at this time and had been for almost a year. I was almost broke and the last dose of drugs was going. I had begun to feel the effects wear off, and I got sick, as a narcotic addict terms it, when the craving comes on him and he has nothing to satisfy it with. I was crazed for the want of dope, and not being overladened with it, leaving Plainview, I began to formulate a fanatical scheme to rob this man that I was riding with before we got to our destination, which was Tulia, Texas. I put it out of my mind and thought that I would endure the suffering and the want until I could get to Amarillo, Texas. I then changed my mind and decided to have immediate relief. I asked Mr. Conner to stop the car. He stopped the car. I then told him to throw up his hands, and he laughed and asked me what I thought I was doing. Then I pressed a gun to his ribs and said that I want your money, and I want it. He started to struggle with me and I did it. He still struggled with me and not knowing that I had already shot him once, I shot him again."

Several witnesses testified in behalf of the appellant that he was a morphine addict, and this seems not to have been controverted by

the State. He also introduced expert witnesses touching the effect upon his mind of the habitual use of morphine and also non-expert witnesses touching his mental condition. In his charge to the jury, the court embraced the following language:

"You are further instructed that when the admissions or confessions of a defendant are introduced in evidence by the State, and such admissions or confessions contain exculpatory or mitigating statements, then the whole of the admissions or confessions are to be taken together, and the State is bound by them, unless they are shown to be untrue by the evidence in this case."

The state of the record is not deemed such as would justify this court, aside from the question of diligence, in declaring that in overruling the application for a continuance and the motion for new trial based thereon an abuse of discretion was exhibited.

Complaint is made to the refusal of the court to quash the special venire writ, also to quash the service of the writ and return, and to extend the time for examination of the venire writ and return. It seems that a venire of 250 men was ordered. The return showed the executed writ by personal service upon all named in the writ except six. Of these, the sheriff stated that five were out of the county and one was not found. By a general averment the sufficiency of the diligence exhibited by the sheriff's return was attacked. No evidence was introduced by the appellant controverting the truth of the reasons given in the return for the failure to summon the veniremen who were not served. The sheriff was called by the State and gave further detail supporting his diligence. The return, on its face, is deemed quite sufficient and was not in need of amendment. See Art. 598, C. C. P., 1925; Jones v. State, 85 Tex. Crim. Rep. 538; Furlow v. State, 41 Tex. Crim. Rep. 12; Lewis v. State, 15 Tex. Crim. App. 647; White's Ann. Tex. C. C. P., p. 451, sec. 713. The bill is quite voluminous and somewhat confusing. If we understand its purport and the attending facts, the court, sometime before the trial, made an order directing that a special venire of 250 men be summoned. He noted in the order that there were but seventy-two names on the list of special veniremen furnished by the jury commissioners in compliance with Articles 593 and 594, C. C. P., 1925. The court directed, therefore, that the 72 persons last mentioned be summoned and also 178 additional jurors. The special venire writ followed this order in substance naming the 72 who had been selected by the commissioners and directing the sheriff to summon them and 178 additional. In many subdivisions

of the motion, the writ is attacked upon various grounds growing out of this procedure. We perceive no valid ground for complaint, but think there was substantial compliance with the statute. The veniremen named by the commissioners being insufficient in number, the court (under Art. 595, C. C. P., 1925) was duly authorized to order the sheriff to summon an additional number. In the article mentioned, it is stated in substance that if the commissioners have not designated any or not a sufficient number to make the number required by the special venire, the court shall order the sheriff to summon a sufficient number to complete the venire. The action of the court in the present instance seems to be a literal compliance with the statute. If we comprehend the record, the court, after hearing testimony to the effect that the sheriff's return had been duly filed and the indorsement of the file mark omitted by inadvertence, ordered the clerk to place his file mark on the return, and that after the entry, the appellant made a motion to require that he be served with a copy and allowed one day to examine it. Complaint of the refusal to grant the motion is made in what is denominated Bill of Exceptions No. 3, in which reference is made to Bill No. 2. From the record it is understood that a true copy of the sheriff's return was delivered to the appellant on the 23rd day of May, and that his trial began on the 27th of that month. The amendment of the return by indorsing the file mark thereon was made on the 25th of May. The delivery of a certified copy of the return is demanded by Arts. 600 and 601, C. C. P., 1925. Its purpose is to make known to the accused one day in advance of his trial the names of the persons who will be presented as a special venire from whom the jury to try his case may be selected. Such list appears to have been furnished the appellant at least three and probably four days before his trial began. The only defect in the service of which complaint is made in the motion was that the clerk had not placed upon the copy the notation that the original sheriff's return had been filed with the clerk. This defect was corrected in response to the motion set out in Bill No. 2. Where the service is made and is not defective in matter of substance, it has been uniformly held that an amendment may be made. See Rodriguez v. State, 23 Tex. Crim. App. 503, and numerous other cases collated in White's Ann. Tex. C. C. P., p. 451, sec. 713; Sterling v. State, 15 Tex. Crim. App. 249; Washington v. State, 8 Tex. Crim. App. 377. That the demand of the statute that the appellant be furnished with a true copy of the return is doubtless mandatory. See Roberts v. State, 33 Tex. Crim. Rep. 83; Osborne v.

State, 23 Tex. Crim. App. 431. The mandatory effect, however, is not understood to extend to omissions relating to matters which do not reach the substance. See Murray v. State, 21 Tex. Crim. App. 466, in which there is quoted with approval from a text-writer the following:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time, or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute."

The correct application of the rule, we think, is expressed in Campbell's case, 42 Tex. Rep. 591, thus:

"Whenever there is reason to apprehend that injury may have resulted to the defendant, especially in a case of felony, from a failure to observe directions given the court by the Legislature, we think, unquestionably, the judgment should be reversed."

In the bill under consideration, the re-service and one day's delay were sought upon the ground of necessity by reason of the amendment of the return by inserting the file mark as above stated. Some reference, however, is made in the brief and bill of exceptions to the absence of a seal attached to the certified copy. From the evidence given by the clerk it appears that there was a seal upon the writ but not in the usual place. As to this, however, we may be mistaken as the record is confusing. The absence of a seal is not made a ground of the motion, and if it had been and the seal was in fact absent, an amendment would have been authorized and would probably have been ordered by the court. See Adams v. State, 252 S. W. Rep. 797; Stovall v. State, 253 S. W. Rep. 526, in which the court declined to follow the case of Ollora v. State, 60 Tex. Crim. Rep. 217. The certified copy of the writ being accurate and the service in ample time, we are unable to perceive any reason to apprehend that injury could have resulted to the accused.

Several bills relate to the ruling of the court on the introduction of evidence upon the insanity hearing preliminary to the main trial. From the finding of the jury on the issue of insanity, there exists no right of appeal. The bills, therefore, relate to a matter of which this court is without jurisdiction. See De Silva v. State, 98 Tex.

Crim. Rep. 499; Millican v. Jeffrey, 299 S. W. Rep. 435; Darnell v. State, 24 Tex. Crim. App. 6.

One of the jurors, Darnell, resided in Swisher County, some two or three miles from the scene of the homicide, which took place upon the public highway. In passing, some person pointed out the locality of the homicide; and he had heard the case discussed at Kress, his trading place, which was not very far therefrom. Such discussion had taken place some two years before the trial. Like testimony was given by one of the other jurors who sat upon the trial. At the time they were taken upon the jury, appellant had exhausted his peremptory challenges and insists in his bill that his challenge for cause should have been sustained. The jurors had no opinion and are not shown to have talked to any witnesses. After his examination, the court regarded them as impartial jurors. Under the facts before him, it seems clear that under subdivision 13 of Art. 616, C. C. P., 1925, the court, in his ruling, did not abuse his discretion. The jurors were subject to none of the statutory disqualifications. The complaints of the rulings of the court are not deemed meritorious. A juror stated that his conviction and conscientious scruples against the infliction of the death penalty were absolute. The court did not err in sustaining the State's challenge for cause. See Gonzales v. State, 31 Tex. Crim. Rep. 508; Vickers v. State, 92 Tex. Crim. Rep. 182.

In his confession, the appellant stated in substance that he was twenty-two years of age; that on July 12, 1925, he visited the home of John J. Miller; that he conversed with Miller about "hi-jacking" and got a pistol at Miller's home. From there he went to various places, and finally caught a ride with a man in a Ford Sedan and rode with him to a point near Kress in Swisher County. Appellant said that he was a narcotic addict, was out of money, craved a drug, and formed a design to rob the man with whom he was riding; that he was urged thereto by his suffering for want of the drug. He ordered Conner to stop his car and throw up his hands. He stopped the car, but when told to throw up his hands, Conner laughed. When appellant demanded the money, Conner resisted and a struggle ensued. He shot Conner twice. After killing Conner, appellant took twenty dollars from his person. He also took possession of the car and turned back. On the road between Plainview and Hale Center he stopped the car, and threw Conner's coat and everything else that was in it along the side of the road. At Lubbock, he bought some whisky for three dollars. While getting

some gasoline an attendant noticed blood upon the car. Thinking he might be detected, he hid the gun with which he had killed the deceased, left the car at Slaton, and bought a ticket from there to Sweetwater. He went to Colorado, Texas, and there had a conversation with John Miller. He stayed at Miller's house three days and two nights, and then caught a freight train at night and rode to El Paso. The homicide took place at night on July 16, 1925.

The admissibility of the confession is challenged. The evidence of W. B. Jones, to whom the confession was made, was to the effect that he first saw the appellant in the Plainview jail and afterwards saw him in jail at Tulia, where the appellant made a statement which was reduced to writing. Jones testified that after giving the accused the warning which was embraced in the statement, and after it was finished, it was read by the appellant and signed in the presence of the witness and T. H. Walters. The statement was produced and identified. On cross-examination, the witness testified that he had been a peace officer for twenty-five years; that his father was a peace officer; that he had taken many so-called voluntary confessions; that he wrote the confession on a typewriter; that after completing the first sheet, he handed it to the appellant. The witness said that he had previously talked to the appellant in Plainview; that he had two conversations with the appellant each of which lasted about twenty minutes. From the testimony of the witness, as found in the bill, we quote:

"I told him that in my opinion that it would be the best for him to make a statement and make a clean confession and he told me there was a question in his mind as to what he was going to do; that he would have to satisfy his mind as to how his mother would feel best about it, whether she would appreciate him making the statement and telling the truth or just to sit still and say nothing. I could not say whether he ever saw his mother before this statement; he did not that I know of. I told him that if he would make a statement that the people generally—the court and jurors would be more kindly disposed to him. I told him they would have a better feeling towards him, and that it was the wisest, sanest and best for him to do. As to whether I told him I would do all I could for him and his brother if he would make a statement, I told him there was nothing I could do for him, nothing anyone could do for him. * * * I believe I did testify this morning while the jury was out that I said I would do the best I could for him if he would go ahead and make a state-

ment, or in substance and effect that way; I know only by hearsay that he did make two other statements."

Under further examination by State's counsel, the witness testified: "I did not make any promises at all at the time."

From the bill as we understood here, it is made manifest that the court was called upon to determine whether the predicate which is set out in the bill and consists of the testimony of the witness Jones (set out in the bill) constituted a predicate upon which the confession might properly be read to the jury or whether the testimony embraced in the bill required the court to decide as a matter of law that the confession was not voluntary and therefore not admissible. In qualifying the bill, the trial judge states in effect that he deemed the predicate sufficient to require the receipt of the confession in evidence and to demand an appropriate instruction to the jury to disregard it unless it was voluntarily made. In reaching that conclusion, the opinion is expressed that the trial court committed no error. The confession on its face was in full compliance with the statutory requirement touching warning, reduction to writing and signature of the accused. The circumstances under which it was taken and the conversations with the witness Jones, to whom the confession was made, are deemed such as to do no more than to present a question of fact and not to condemn the confession as an involuntary one. Precedents to the point are Thompson v. State, 234 S. W. Rep. 401; Bennett v. State, 254 S. W. Rep. 949; DeBeauford v. State, 254 S. W. Rep. 573; Richardson v. State, 92 Tex. Crim. Rep. 526; Hanus v. State, 104 Tex. Crim. Rep. 543; Ruiz v. State, 92 Tex. Crim. Rep. 73; White v. State, 105 Tex. Crim. Rep. 169; Trammel v. State, 100 Tex. Crim. Rep. 412; Silva v. State, 102 Tex. Crim. Rep. 415; Wilson v. State, 103 Tex. Crim. Rep. 403. See also Vernon's Ann. Tex. C. C. P., 1925, Vol. 2, Art. 727, p. 825, note 11; page 831, note 14; and page 832, note 15; also Williams v. State, 88 Tex. Crim. Rep. 87.

T. H. Walters was called by the appellant and testified that he, in company with Mr. Hamilton, brought the appellant from Plainview to Tulia before the confession was made. The witness said that he told the appellant that he was to be taken back to Tulia; that he might as well make up his mind to make a statement; that he said to him:

"The attitude you are taking in this, you are trying to beat it. You are fixing for a mob to get you, and under present conditions there is but little difference it makes to me about it."

The witness made this remark to the appellant knowing that he wanted to make a statement, but that his brother and his attorney had advised him not to do so. The witness referred to another statement but gave no further details. It is inferred that counsel for appellant contends that if the predicate from Jones's testimony warranted the receipt in evidence of the appellant's confession, the testimony of Walters last-above quoted was such as to denounce the confession as involuntary as a matter of law, and to require the trial court and this court to treat it as a nullity. The qualification of the bill of exceptions taken to the admission in evidence of the confession states that there was no other confession introduced. The testimony suggests in a rather intangible manner the idea that a previous confession had been obtained under improper influences which were still operating upon the mind of the appellant at the time he made the confession which is in evidence. Such testimony seems wanting, and in qualifying, the court indicates that there was none. If there was evidence to such effect of sufficient cogency to make the validity of the confession questionable, it was still a question for the jury's decision. See Williams v. State, 88 Tex. Crim. Rep. 87; Walker v. State, 7 Tex. Crim. App. 263. The testimony of the witness Walters, which has been quoted above, and that of Jones, is all that has been found bearing upon the legal question mentioned. There is no other testimony upon which to found a claim of coercion, intimidation or threatened mob violence. The confession introduced was not made to Walters but was made to Jones. It is true that Walters was present and had requested Jones to talk to the appellant, but other than stated above the record is silent, touching undue activities of Walters in obtaining the confession. Appellant did not testify and there was no affirmative evidence from any source that he claimed to have been coerced or persuaded in any way or unduly influenced to make the confession which was introduced in evidence. On the subject in hand, Walters was introduced as a witness for the appellant. In addition to the instruction in the main charge which we have quoted, touching the confession, a special charge requested by the appellant was given to the jury. That charge reads as follows:

"GENTLEMEN OF THE JURY: You are instructed that if any one in authority, or any one in the jail believed by the defendant to be in authority, held out to the defendant the slightest hope of benefit to be gained by the signing of the confession introduced in evidence before you or that the remotest fear of injury would be

avoided by his signing such statement, then and in such event you are instructed that such confession is not evidence as a matter of law and in such event such confession would not be freely and voluntarily made even though it is recited in such confession to have been so made; and in such event you are instructed that you cannot consider said confession as a circumstance against the defendant and the same is expressly withdrawn from your consideration for any purpose."

Independent of the confession of the accused, there was evidence authorizing the jury to find the following facts: The deceased, J. Fred Conner, resided at Tulia, Swisher County, Texas. He was a dealer in automobiles. On July 15, 1925, he visited Baird, Texas, for the purpose of trading automobiles. A trade was made and the deceased received two checks from Dr. A. R. Hays. The deceased left Baird about nine o'clock on the morning of July 16, 1925, riding in a Ford Sedan. On his way to Tulia, he passed through Clyde, Abilene, Sweetwater, Snyder, Post, Slaton, Lubbock, Plainview and Kress, covering a distance of some 200 miles. To reach Tulia, the journey would have required about twelve hours. At Clyde, he bought fruit and had money in his pocket-book. As he passed through Lubbock, a witness rode for a short distance on the running board of the car, and saw the appellant who, at the time, was riding in the car with the deceased. Conner was not thereafter seen alive, but on the morning of July 17th, his body was found in a ditch near the highway between Lubbock and Tulia, at a point in Swisher County. Near the body were the tracks of a car which seems to have been turned from its course towards Tulia and driven back towards Slaton, leaving a trail of blood upon the ground for some yards. Conner had been shot and killed. There were two wounds made by a .25-calibre automatic pistol. One wound was beneath the shoulder on the right side; the other was in the back of his head. A loaded cartridge and an empty shell of the calibre mentioned above were found near the body. A bullet was taken from the head of the deceased. On the morning of July 17th, his car was found abandoned at Slaton, about sixty miles from the body of the deceased. There was a pool of blood on the running board and also blood stains on the hood. Finger prints were found upon the car in several places. These were identified as the finger prints of the appellant. About midnight of July 16th, at Slaton, a railroad ticket to Sweetwater was sold to the appellant. Several days after the homicide, a pistol of the description mentioned above was found near the highway between Lubbock and Slaton. The magazine thereof

was empty. By means of the factory number and other circumstances the pistol was traced to the witness Miller and to the possession of the appellant. At the time the deceased was killed, appellant visited the Miller home and after leaving it, returned on the morning of July 17th and told the witness John Miller of the killing and his connection therewith. Appellant afterwards communicated with Miller from California, directing him to ship the clothes which had been left at Miller's house to Phoenix, Arizona, to an assumed name. It was shown that the shipment was made.. Miller received from the appellant a postal card mailed from a steamship en route to San Francisco, California. Conner was robbed of his pocket-book and the checks given him by Hays were found in a bar pit on the road between Plainview and Lubbock. The pocket-book was found, but not the money.

The court instructed the jury that the State relied for a conviction upon circumstantial evidence and embraced in his charge the law governing a trial upon that character of evidence. An instruction was also given that there could be no conviction upon the confession alone, but that corroboration was essential to the establishment to the satisfaction of the jury beyond a reasonable doubt of the commission of the offense and the connection of the appellant therewith. An instruction was given that the signed confession could not be considered against the accused unless it was freely and voluntarily made without compulsion or persuasion. The jury was further instructed that the confession was to be taken as a whole and that the State was bound by any mitigating statements contained therein unless they were shown to be untrue. The instructions were more favorable to the appellant than the law required.

The verbal statement by the appellant to the witness John Miller could not be fairly interpreted as other than a confession by the appellant that he had killed the deceased, and to characterize the case as one of direct evidence. That testimony, together with the criminating circumstances in the testimony, was enough, without the written confession, to show the guilt of the accused. The jury was also told in the court's charge that there could be no conviction on the confession, and that unless there was testimony independent of the confession which corroborated it, an acquittal should result. On the issue of insanity, the jury was instructed in a manner against which no complaint was addressed or deemed tenable.

A review of the procedure and the facts leads to the conclusion that the verdict declaring the appellant responsible for the death of the deceased was rendered on sufficient evidence in a fair and legal

trial and that nothing transpired therein which would warrant this court in annulling the verdict.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant urges that we erred in two instances, viz: in upholding the admission in evidence of the confession of appellant; also in approving the refusal of a special charge instructing the jury not to consider said confession. We have again reviewed the matters relating to the admission of this confession and have no doubt of the correctness of the action of the trial court in admitting same. The question of the conformity to the rules regarding confessions is primarily for the trial judge, but when he admitted said confession, and the question of fact as to the voluntary character of such confession and its freedom from improper influence arose, the court properly submitted that issue to the jury, and from our examination of the record we are of opinion that it was submitted from every possible angle and as fully and fairly as could be.

From our inspection of this record it appears to us that appellant is wholly without cause of complaint at any procedure on the part of the court. He was given the benefit of a charge on circumstantial evidence, to which he was not entitled under the facts. Every defensive issue supported by any testimony seems to have been presented to the jury. We do not think any error appears in either of the two matters complained of, and the motion for rehearing will be overruled.

*Overruled.*