TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00796-CR







Jesse Dwayne Perez, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-96-0032, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING







A jury found appellant Jesse Dwayne Perez guilty of intentionally or knowingly
causing bodily injury to a child. Tex. Penal Code Ann. § 22.04(a)(3) (West 1994). The district
court assessed punishment at imprisonment for ten years and a $10,000 fine. Appellant complains
of charge error and urges that the evidence is legally insufficient to sustain the conviction. He also
contends his trial counsel rendered ineffective assistance. We will overrule these contentions and
affirm.

Appellant began dating Jennifer Linares when he was eighteen years old and she
was fifteen. Linares soon became pregnant, and she gave birth to a son, Jesse Dwayne Perez, Jr.,
on August 21, 1995. Following the birth, Linares continued to live at home in Kyle with her
mother and younger siblings, while appellant divided his time between the Linares house and the
residence of friends. Linares's older sister, Yvette Mancias, came to the house almost daily to
help Linares with the baby. On occasion, Linares and the child went to Mancias's Austin home,
where she lived with her husband and children.

On October 6, 1995, Linares's baby began to cry inconsolably. The next day, over
appellant's objections, Linares took the child to a hospital emergency room. The child was
diagnosed as having colic and a medicine was prescribed. Despite the medication, the colic
persisted and the baby often vomited. On October 10, two incidents occurred that later proved
significant. First, while sitting in his "bouncing chair," the baby fell over onto a carpeted floor. 
Later, Linares put the sleeping child in his crib and took a shower. When she returned to the
bedroom, she found the baby in bed with appellant.

On October 11, Linares and the baby went to Mancias's house, and then to the
pediatrician for a scheduled examination. The child had been crying and vomiting, but an
examination of the child's stomach was negative and the doctor recommended a new formula. 
Linares and the baby spent that night with her sister, much to appellant's displeasure. According
to Linares and Mancias, appellant did not like Mancias or her husband, and did not want Linares
to spend time with them. Linares testified that appellant came to the house that night, "mad
because I was there, and he was screaming at me, and it was like he was going to come and hit
me because I was there."

On the morning of October 12, the baby began to have seizures. Linares and
Mancias took the child to the pediatrician's office, where an ambulance was summoned. At the
hospital, the child was found to have bilateral subdural hematomas, extensive retinal bleeding, and
broken ribs. Asked by physicians if she could explain the child's condition, Linares told them
about the fall from the "bouncing chair" two days earlier. The medical testimony was that the
baby's injuries could not have been caused by such a minor fall. To the contrary, such injuries
are generally the result of a fall from a great height, an automobile accident, or violent shaking
by an adult. In fact, this combination of symptoms is commonly referred to as "shaken baby
syndrome."

Later that day, Linares confronted appellant in the baby's hospital room. She
testified, "I said, 'Jesse, I'd like to know if anything happened; did he fall or anything?' And he
said, 'That night you took a shower, I shook the baby.'" Linares began to cry and told appellant
"he had to tell," but appellant did not respond. The following morning, Linares's mother, older
sisters, and other family members came to the hospital. Linares told appellant to tell them "what
you told me last night." According to Linares and other witnesses, appellant "put his arms out
and was crying and said, 'I shook the baby.'" One of the sisters immediately contacted a child
protective services worker, Angela Ness. Ness testified that in a private interview that same day,
appellant told her that while Linares was showering on October 10, he had "put his hand on the
baby's chest and was bouncing the baby on the bed to try and get him to fall back to sleep." When
Ness and appellant rejoined Linares and her family, Ness recounted appellant's statement. The
family became upset and urged appellant to tell her what he had told them. Ness said, "Mr. Perez
then began crying and stated that that was all he had to say to me."

The State's witnesses also testified more generally about appellant's attitude toward
Linares and their baby. Linares testified that appellant was jealous of the baby and once told her,
"I swear I hate that baby." Appellant often expressed the opinion that Linares spent too much
time with the child, and would protest when Linares would respond to his crying. Appellant did
not want Linares to take the child to the doctor, and she was forced to sneak out of the house at
5:00 a.m. to take the baby for his two-week checkup. When she returned from the doctor's office,
appellant was angry.

Appellant did not permit Linares to dress up or fix her hair, and did not want her
to go anywhere without his permission. Mancias testified that when Linares came to her house
to visit or do laundry, appellant would call and angrily demand that she return to Kyle. Mancias
described Linares's relationship with appellant as abusive, and said that she urged her sister to
obtain counseling at a battered women's shelter. Linares testified that appellant "used to always
hit me," even when she was pregnant. 

Linares's brother, Gilbert Alvarez, said that he often saw appellant toss the baby
in the air. Using a doll to demonstrate, Alvarez testified, "He would hold the baby like this and
flip it up in the air and catch it, (Indicating.) Sometimes he would do it so the baby would spin
twice, and catch him like that, (Indicating.)" Alvarez added, "[H]e thought it was funny. He
would smile and laugh." Alvarez also testified that appellant sometimes shot the baby with a
"Nerf gun," a toy rifle that shot foam-tipped projectiles. On other occasions, appellant would take
the baby from Linares, then go to another room and lock the door. Linares would be forced to
beg appellant to return the baby to her.

In his challenge to the sufficiency of the evidence, appellant does not dispute that
he was shown to have caused bodily injury to his infant son by shaking him. He urges, however,
that the evidence does not legally sustain the jury's finding that he acted intentionally or
knowingly. Injury to a child is a "result of conduct" offense, which means that the required
culpability goes to the result of the defendant's conduct, and not merely to the nature or
circumstances of that conduct. Alvarado v. State, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985);
Beggs v. State, 597 S.W.2d 375, 377 (Tex. Crim. App. 1980). It is appellant's contention that
the State failed to prove that he shook the child with the conscious objective or desire to inflict
bodily injury, or with an awareness that bodily injury was reasonably certain to result. See Tex.
Penal Code Ann. § 6.03(a), (b) (West 1994) (defining culpable mental states). According to
appellant, the State's evidence shows only that he was criminally negligent, or at most reckless,
with respect to the results of his conduct. See id. § 6.03(c), (d).

A defendant's culpable mental state must generally be inferred from the
circumstances. See Johnson v. State, 932 S.W.2d 296, 303 (Tex. App.--Austin 1996, pet. ref'd). 
Appellant argues that the circumstantial evidence in this cause does not support the inference that
he inflicted his son's injuries intentionally or knowingly because the "shaken baby syndrome" was
only recently identified as such. "It is . . . unlikely," argues appellant, "that [he] could have
intended results which medical specialists have only lately discovered are caused by the sort of
actions which [he] admitted." Appellant cites the testimony of an expert witness quoted in an
opinion by the United States Court of Military Appeals: "[T]ypically . . . the adult becomes angry
with the child . . . crying . . . . Takes up the child and begins to shake it . . . . And the intent
there in these cases is not to injure or to kill . . . . It's to stop the crying." United States v.
Curry, 31 M.J. 359, 365 (1990). (1)

The evidence establishes that an infant must be shaken with extraordinary force to
produce subdural hemorrhaging, retinal bleeding, and broken ribs. While it is possible that
appellant did not intend to inflict this particular combination of injuries when he shook his son,
or know that these particular injuries were reasonably certain to result from his actions, the jury
could nevertheless infer that, at the least, appellant knew that such violent shaking of a seven-week-old infant was reasonably certain to cause physical pain, illness, or impairment of physical
condition. See Tex. Penal Code Ann. § 1.07(a)(8) (West 1994) (defining "bodily injury"). 
Moreover, the jury had before it evidence that appellant had expressed hatred for the child, had
exposed the child to danger for his personal amusement, and had more than once attempted to
prevent the child from receiving medical attention. Viewing all the evidence in the light most
favorable to the verdict, a rational trier of fact could find that appellant intentionally or knowingly
caused the child's injuries. See Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820
S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981)
(standard of review). Point of error one is overruled.

In the definitional portion of its jury charge, the district court gave the full statutory
definitions of intentional and knowing conduct. Because injury to a child is a "result of conduct"
offense, the court should have defined the culpable mental states solely in terms of the results of
conduct, omitting those portions of the statutory definitions that relate to the nature and
circumstances of conduct. See Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). 
Appellant brings this charge error forward in his second point of error, but because he did not
object to the charge on this ground, the error requires reversal only if it caused egregious harm. 
Id. at 491-92; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

In assessing the harm resulting from the inclusion of improper conduct elements in
the definitions of culpable mental states, we may consider the degree to which the culpable mental
states were limited by the application portion of the charge. Hughes v. State, 897 S.W.2d 285,
296 (Tex. Crim. App. 1994). Appellant mistakenly asserts in his brief that the application
paragraph in this cause authorized his conviction if the jury merely believed that he intended to
shake the infant. In fact, the application paragraph authorized appellant's conviction if the jury
found that he "intentionally or knowingly cause[d] bodily injury to JESSE PEREZ . . . by
knowingly and intentionally shaking the aforesaid infant child . . . ." Clearly, the application
paragraph required the jury to apply the "result of conduct" portion of the statutory definitions of
intentional and knowing conduct. While the charge also required them to apply the "nature of
conduct" portion of the statutory definitions, this had the effect of increasing the State's burden
of proof and did not prejudice appellant. Considering the charge as a whole, we conclude that
appellant was not egregiously harmed by the definitional errors. Point of error two is overruled.

Finally, appellant asserts that his trial counsel was ineffective for several reasons. 
To prevail on this claim, appellant must show by a preponderance of the evidence that his attorney
made such serious errors that he was not functioning effectively as counsel and that these errors
prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. Strickland
v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986); and see Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); O'Hara v. State,
837 S.W.2d 139, 143 (Tex. App.--Austin 1992, pet. ref'd). Appellant must overcome a strong
presumption that counsel's conduct fell within the wide range of reasonable professional
assistance. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). This burden is made
more difficult when, as in this cause, no motion for new trial was filed and there is no record
focused on the conduct of counsel. Id. at 772 (Baird, J., concurring). (2)

Appellant's primary complaint is that his attorney did not object to testimony he
contends was relevant only to show his bad character. We have already discussed most of the
evidence to which appellant refers: appellant's violent and abusive acts against Linares; appellant's
dislike of the baby; appellant's reckless and violent conduct with the child, such as throwing him
in the air; appellant's attempts to prevent the child from receiving medical care; and appellant's
dislike of Linares's family, particularly her sister. Appellant also cites Linares's testimony that
he has two children "from a girl named Patty, one from Tina and one on the way from a girl
named April Ybarra." Linares added that when she met appellant, "he swore up and down he had
no kids." Appellant urges that his attorney should have objected to this testimony as inadmissible
character evidence, and as unfairly prejudicial. See Tex. R. Evid. 403, 404(b).

Rule 404 notwithstanding, in a prosecution for injury to a child, evidence of other
crimes, wrongs, or acts committed by the defendant against the child shall be admitted for its
bearing on relevant matters, including the defendant's state of mind and the previous relationship
between the defendant and the child. Tex. Code Crim. Proc. Ann. art. 38.37, §§ 1(2), 2 (West
Supp. 1999). Evidence that appellant resented and disliked the child, and was violent and abusive
toward the child, was clearly admissible under this statute to prove appellant's motive and intent. 
Because appellant's hostility toward the child was so closely intertwined with his hostility toward
the child's mother, much of the testimony regarding his abusive treatment of Linares was also
admissible under rule 404(b) to show appellant's motive and intent. And because appellant's intent
was the central issue in the case, the probative value of this evidence clearly outweighed the
danger of unfair prejudice. See Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App.
1990) (op. on reh'g).

This is not to say that none of the evidence cited by appellant was open to objection
as improper character evidence. For example, the testimony that appellant fathered several
children by other women, and lied to Linares about his promiscuous behavior, was arguably
objectionable as merely showing appellant's bad character. Counsel's performance must be judged
in its totality, however, and not by isolating individual errors or omissions. Oestrick v. State, 939
S.W.2d 232, 237 (Tex. App.--Austin 1997, pet. ref'd). We also must avoid the distortions of
hindsight, and evaluate counsel's conduct from his perspective at the time of trial. Ex parte
Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). We cannot say that defense counsel's
failure to object to the relatively few instances of arguably improper character evidence was such
a serious error as to be outside the scope of reasonably effective assistance.

Appellant also complains that his attorney should have requested an instruction
limiting the jury's consideration of the evidence discussed above. Appellant does not specify the
precise instruction he believes should have been given. In any event, an instruction limiting a
jury's consideration of certain evidence is not required when the evidence is admissible to prove
a main fact in the case. Porter v. State, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986);
McWherter v. State, 607 S.W.2d 531, 535 (Tex. Crim. App. 1980); Navarro v. State, 863 S.W.2d
191, 199 (Tex. App.--Austin 1993), pet. ref'd, 891 S.W.2d 648 (Tex. Crim. App. 1994). 
Appellant's motive and intent were a main issue in this cause. See Dillard v. State, 477 S.W.2d
547, 551 (Tex. Crim. App. 1971); Cantu v. State, 135 S.W.2d 705, 709-10 (Tex. Crim. App.
1940). Thus, no limiting instruction was required and counsel cannot be faulted for failing to
request one.

Next, appellant points out that his trial counsel did not request notice of extraneous
offenses the State intended to prove. See Tex. R. Evid. 404(b). There is no showing that counsel
did not receive notice, and therefore no basis for concluding that such a request was necessary.

Appellant argues that defense counsel should have objected to certain hearsay
testimony. In each instance, however, the substance of the testimony had already been properly
adduced and an objection would not have benefitted appellant.

 Appellant claims that counsel should have moved to quash the indictment "for
placing the culpable mental state in the manner and means." The indictment alleged that appellant
"knowingly and intentionally cause[d] bodily injury . . . by knowingly and intentionally shaking
the aforesaid infant child . . . ." The indictment properly alleged that appellant intentionally and
knowingly caused the bodily injury. The additional allegation that he intentionally and knowingly
shook the child increased the State's burden of proof, and a motion to quash on this basis would
have been of no significant benefit to appellant. Appellant also says that counsel should have
required the State to specifically identify in the indictment the bodily injuries suffered by the child. 
If not essential to fair notice, the State is not required to plead its evidence. Robinson v. State,
665 S.W.2d 826, 829 (Tex. App.--Austin 1984, pet. ref'd). We are not persuaded that a detailed
allegation of the child's injuries in the indictment was essential to fair notice.

Appellant also complains of his attorney's failure to object to the jury charge,
repeating the erroneous contention, previously discussed, that the charge authorized his conviction
without proof that he intended to cause bodily injury or knew such injury would result from his
actions. Appellant further asserts that counsel should have requested instructions on the lesser
included offenses of reckless and negligent injury to a child, but he makes no effort to demonstrate
that the evidence raised an issue as to whether he was guilty only of these lesser offenses. See
Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).

Finally, appellant asserts that trial counsel's strategy was unreasonable. In support
of this allegation, appellant complains that "[t]he only evidence which defense counsel sought to
exclude was Appellant's incriminating statements made to his wife and relatives." Appellant does
not explain why it was unreasonable for counsel to seek the exclusion of this incriminating
testimony. He implies that counsel's objections to this testimony were not sound ones, but does
not suggest what the proper objection, if any, would have been.

Considering the totality of counsel's representation, and for the reasons discussed,
we hold that appellant has not demonstrated that he is entitled to a new trial because his attorney
rendered ineffective assistance. Point of error three is overruled.

The judgment of conviction is affirmed.



 

 B. A. Smith, Justice

Before Justices Kidd, B. A. Smith and Powers*

Affirmed

Filed: January 28, 1999

Do Not Publish







* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Elsewhere in this opinion, in a passage not cited by appellant, the same expert is quoted
describing the amount of force associated with "shaken baby syndrome": "It's not just violent
shaking, it's very violent; indeed, savage shaking, and therefore is more a function of great
energies, rage, or great anger." Id. at 364.
2. Appellant suggests that we abate the appeal and remand the cause for an evidentiary hearing
on his ineffective assistance claim. In the absence of any showing that such an extraordinary
remedy is required, however, we decline to interrupt the appellate process to permit appellant to
make a record that he could have made earlier at a hearing on a motion for new trial, and that he
can make later in a post-conviction habeas corpus proceeding.



ily: CG Times Regular"> Appellant claims that counsel should have moved to quash the indictment "for
placing the culpable m